**O**

# United States District Court
# Central District of California

MARLENE M PINNOCK,

            Plaintiff,

    v.

JOHN DOE; CHP COMMISSIONER
JOSEPH FARROW; C.H.P. OFC.D.
ANDREW #20470; C.H.P.
INVESTIGATOR S. TAKETA #16454;
DOES 2–10,

            Defendants.

Case № 2:14-cv-05551-ODW(ASx)

**ORDER GRANTING MOTION TO
STAY ACTION [34]**

## I.   INTRODUCTION

Plaintiff Marlene M. Pinnock filed this action after Defendant California Highway Patrol ("CHP") Officer Daniel Andrew allegedly struck her 10 to 15 times on the I-10 freeway in Los Angeles, California.   CHP conducted an internal investigation of the incident and then turned the matter over to the Los Angeles County District Attorney for possible criminal prosecution.   In light of the pending investigation, Andrew moves to stay the action for 90 days to preserve his Fifth Amendment privilege against self-incrimination and ability to defend this lawsuit. The Court finds that a brief stay is warranted and thus **GRANTS** Andrew's Motion. (ECF No. 34.)

## II.   FACTUAL BACKGROUND

On July 1, 2014, Pinnock was walking along the I-10 freeway in Los Angeles, California, around La Brea Avenue.  (FAC ¶ 12.)  Andrew, a CHP officer, addressed her by name.  (*Id.*)  Pinnock responded that she was going to leave the freeway.  (*Id.*)  She began exiting the freeway and was then thrown to the ground.  (*Id.*)  Andrew repeatedly punched Pinnock on her temples, face, and shoulders 10 to 15 times.  (*Id.*; ¶ 22)  Pinnock told the officer to "stop" because she had not done anything to him.  (*Id.* ¶ 12)  After Pinnock turned slightly, Andrew ripped her dress.  (*Id.*)  Andrew, assisted by another officer, then arrested Pinnock.  (*Id.*)  The incident was caught on video tape by three passersby.  (*Id.* ¶¶ 17–19.)

Since the incident, Andrew has been under investigation by CHP and the Los Angeles County District Attorney's Office.  (Schwartz Decl.)  CHP has finished its investigation and turned the matter over to the District Attorney to make the decision whether to criminally prosecute Andrew.  (*Id.*)

On July 17, 2014, Pinnock filed this action against Andrew, CHP Commissioner Joseph Farrow, and CHP Investigator S. Taketa.   (ECF No. 1.)  Pinnock alleges claims for civil-rights violations under 42 U.S.C. § 1983; conspiracy to violate civil rights under 42 U.S.C. § 1985(3); *Monell* liability; and claims under California's Ralph and Bane Acts.  (*Id.*)  On August 19, 2014, Defendants filed a series of motions to dismiss and strike.  (ECF Nos. 18–20, 25.)  Andrew then filed this Motion to Stay Action for 90 days pending the District Attorney's review of the incident.  (ECF No. 34.)

## III.   LEGAL STANDARD

The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of related criminal proceedings.  *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995.)   It is constitutionally permissible for a defendant to have to choose between testifying in a civil matter and asserting his Fifth Amendment privilege.  *Id*.  While a stay is an "extraordinary remedy that should be granted only

1  when justice so requires," *Chao v. Fleming*, 489 F. Supp. 2d 1034, 1037 (W.D. Mich.

2  2007), a court may decide in its discretion to stay civil proceedings when the interests

3  of justice require it. *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899 (9th

4  Cir. 1989).

5       In deciding whether to stay civil proceedings in light of parallel criminal

6  proceedings, the Ninth Circuit has expounded various factors a court should consider,

7  including (1) the extent to which the civil case implicates the defendant's Fifth

8  Amendment rights; (2) the plaintiff's interests in proceeding expeditiously and

9  potential prejudice resulting from a delay; (3) judicial efficiency; (4) the interests of

10  nonparties; and (5) the public's interests in the pending civil and criminal litigation.

11  *Keating*, 45 F.3d at 324–25.

12                    **IV.   DISCUSSION**

13       After considering all of the *Keating* factors, the Court finds that the extent to

14  which Andrew's Fifth Amendment privilege against self-incrimination would be

15  implicated in this action justify a 90-day stay to determine whether the District

16  Attorney will pursue criminal prosecution.

17  **A.    Extent to which Andrew's Fifth Amendment rights are implicated**

18       While the extent to which a defendant's Fifth Amendment rights are implicated

19  is a significant factor, it is only one consideration a court must weigh against the

20  others. *Keating*, 45 F.3d at 326. Courts have recognized that there is a strong case in

21  favor of a stay after a grand jury returns a criminal indictment and where there is a

22  large degree of overlap between the facts involved in both cases. *See Molinaro*, 889

23  F.2d at 903; *Sec. & Exch. Comm'n v. Dresser Indus.*, 628 F. 2d 1368, 1375–76 (D.C.

24  Cir. 1980); *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007);

25  *McCormick v. Rexroth*, No. C 09-4188 JF, 2010 WL 934242, at *2 (N.D. Cal. Mar.

26  15, 2010). But a stay is not necessarily warranted where a defendant's Fifth

27  Amendment rights can be protected "through less drastic means, such as asserting the

28  / / /

1    privilege on a question-by-question basis . . . ." *Doe v. City of San Diego*, No. 12-cv-
2    689-MMA-DHB, 2012 WL 6115663, at *2 (S.D. Cal. Dec. 10, 2012).

3         Andrew argues that he faces a substantial burden if the case proceeds in the face
4    of potential criminal liability: having to choose between invoking his privilege against
5    self-incrimination and the ability to defend himself in this civil action.  This factor is
6    inherent in every situation where a civil defendant is or may be subject to criminal
7    prosecution arising out of the same facts as the civil case.  It certainly is an unenviable
8    situation.  While a defendant in a criminal case may constitutionally assert his Fifth
9    Amendment rights with no adverse consequence, a trier of fact in a civil case may
10   draw an adverse inference from invocation of the Fifth Amendment.  *Doe ex rel.*
11   *Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000).  The Ninth Circuit has
12   recognized that this consequence alone does not compel a stay pending the outcome of
13   a related criminal case.  *Keating*, 45 F.3d at 326; *see also Int'l Bus. Machs. Corp. v.*
14   *Brown*, 857 F. Supp. 1384, 1387 (C.D. Cal. 1994) ("The position in which defendants
15   have been placed by this denial of a stay is the rule, rather than the exception,
16   whenever criminal and civil cases are pursued simultaneously.").

17        Proceeding in this case while invoking the Fifth Amendment will protect
18   Andrew against criminal inculpation.  But he will pay a hefty price: he will essentially
19   have to forfeit any defense in this action.  This is because a civil defense and
20   remaining silent are mutually antagonistic choices.  Choosing one necessarily results
21   in giving up the other.  A defense in this action will require Andrew to explain his
22   conduct and answer Pinnock's allegations.  Those statements would certainly be
23   fodder for a later criminal prosecution.  This leads to the inevitable question of
24   whether a civil defendant in a situation like Andrew's really does have a voluntary and
25   intelligent "choice" when neither option can save the defendant from either civil or
26   criminal liability.

27        The Court notes that this factor is slightly less pressing in this case because the
28   Los Angeles County District Attorney has not yet charged Andrew with any crime.

1   But the short, 90-day stay Andrew requests counterbalances any weakness in this
2   factor.  In fact, the Court can and will order that the stay will terminate either at the
3   end of 90 days or if the District Attorney announces that it will not prosecute Andrew,
4   whichever occurs first.  The stay, therefore, might well be shorter than 90 days
5   depending upon the outcome of the District Attorney's investigation.

6   The Court thus finds that the risk of either forfeiting Andrew's privilege against
7   self-incrimination or his ability to defend in this civil action weighs heavily in favor of
8   granting the 90-day stay.

9   **B.   Prejudice to the plaintiff**

10  Courts have recognized that a civil plaintiff has an interest in having her case
11  resolved quickly.  *See S.E.C. v. Loomis*, No. 2:10-cv-00458-KJM-KJN, 2013 WL
12  4543939, at *2 (E.D. Cal. Aug. 27, 2013).  Courts have also recognized that there may
13  be prejudice to a plaintiff where a discovery stay might result in her inability to locate
14  other potential defendants.  *See Gen. Elec. Co. v. Liang*, No. CV 13-08670
15  DDP(VBKx), 2014 WL 1089264, at *4 (C.D. Cal. Mar. 19, 2014).

16  Pinnock undoubtedly has a substantial interest in timely litigating her action.
17  Her allegations regarding Andrew's conduct and the harm she suffered are extreme,
18  and, if true, certainly may warrant substantial relief.  It is somewhat perverse to in
19  some ways "reward" a civil defendant who commits conduct so severe that it may
20  subject him or her to criminal liability with a stay in the civil action.  In such a
21  situation, the civil plaintiff who has allegedly suffered severe harm loses in some
22  respects.  A 90-day stay will cause Pinnock to lose valuable time she could spend
23  conducting discovery establishing her right to relief.  But it is a stretch to say, as
24  Pinnock does, that "[w]ithout discovery . . . evidence will be lost."  (*See* Opp'n 3.)
25  The possibility of evidence getting lost always exists, and the passage of time
26  certainly exacerbates the problem.  But there is no guarantee that evidence will
27  definitely be lost during a short, 90-day stay.
28  / / /

1    In any event, no one can doubt that this factor weighs strongly in her favor and

2    counsels against a stay.

3    **C.    Judicial efficiency**

4    The Ninth Circuit has recognized that this *Keating* factor normally does not

5    favor granting a stay, because "the court has an interest in clearing its docket."

6    *Molinaro*, 889 F.2d at 903.   But the courts exist to mete out justice—not solely to

7    clear out cases.   If judicial efficiency and a party's constitutional rights are at

8    loggerheads, surely the latter must prevail lest the Court exalt procedure over

9    substance.   This factor is thus neutral at best.

10   **D.    Public and third-parties' interests**

11   The widespread media attention this case has already received demonstrates

12   that the public will likely be interested in many steps of the litigation.   The public thus

13   has an interest in efficient resolution of this matter.   But the Ninth Circuit has also

14   cautioned district courts to not allow this factor to swallow a defendant's

15   constitutional rights.   The court stated,

16       In highly publicized cases, such as the one at hand, judicial and quasi-

17       judicial decisionmakers need to be especially careful that undue

18       consideration is not given a proceeding's impact on the public. . . . In

19       such high visibility situations, it is especially necessary to guard the

20       rights of defendants, and concern for [proceeding in a civil case] must not

21       be allowed to override the individual defendant's due process rights.

22   *Keating*, 45 F.3d at 326.   The Court must therefore break out the scales of justice to

23   balance the public's interest against Andrew's weighty Fifth Amendment rights.   The

24   latter concern tips the scales in Andrew's favor.

25                              **V.    CONCLUSION**

26   For the reasons discussed above, the Court **GRANTS** Andrew's Motion to Stay

27   this case for 90 days.   (ECF No. 34.)   At that time, Andrew shall file a status report

28   / / /

regarding the District Attorney's investigation.  He may also move to continue the stay through a regularly noticed motion.

In light of the stay, the Court will defer ruling on the pending Motions to Dismiss until after the Court lifts the stay.  (ECF Nos. 18–20, 25.)  The Court consequently **VACATES** the October 6, 2014 hearing dates currently set for those Motions.  The Court will recalendar a hearing date on those Motions as necessary upon lifting the stay.

**IT IS SO ORDERED.**

September 19, 2014

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**